IN THE MATTER OF CARL MOSES LEE RESPONDENT

No. 7710DC452

(Filed 21 March 1978)

**1. Insane Persons § 1.2— involuntary commitment—findings required**

    To support an involuntary commitment order the court must find by clear, cogent and convincing evidence that a respondent is both mentally ill and imminently dangerous to himself or others.

**2. Insane Persons § 1.2— imminent danger to self—inability to care for self**

    The trial court's determination that respondent is imminently dangerous to himself because he is unable to provide for his basic needs was supported by evidence that respondent's welfare depends upon his taking certain medication; respondent cannot be depended upon to obtain and take his needed medication outside of a hospital; and respondent is unable to earn money and receives a monthly check of only $121.90.

APPEAL by respondent from *Bason, Judge.* Order entered 30 December 1976 in District Court, WAKE County. Heard in the Court of Appeals 7 March 1978.

This is an appeal from an involuntary commitment order. Following a hearing the court made numerous findings of fact, summarized in pertinent part as follows:

Respondent is a 32-year-old male who has been hospitalized by involuntary commitment six times since 1960, diagnosed each time as borderline mental retardation with schizophrenia. In previous years when respondent was not in the hospital he lived with his mother who is now 72 years old, has had a stroke and has been removed from her home to reside with one of her daughters where she requires constant attention.

Respondent does not own a home and has never held a job although he has helped his brother from time to time in farming and operating a store. Respondent attended school to the fifth grade and has an IQ of 81.

Following his release from his fourth involuntary commitment in January 1974, two medications were prescribed but respondent acknowledged to his doctor that he stopped taking the medicine two or three months before his fifth involuntary commitment in 1975. Following his release from his fifth commitment in November 1975, medicine was again prescribed but thereafter,

when respondent was the only person occupying his mother's home, a bag containing approximately 2,000 pills similar to those prescribed for him were found in his suitcase under his bed. The present proceeding was begun on 9 March 1976 after respondent threatened his brother with a pistol if his brother refused to bring him some beer and wine.

When respondent was admitted to the hospital in 1976 he was excited, exercising poor judgment and was uncooperative with respect to medication. Shortly thereafter his medication was changed to Prolixin, an anti-psychotic drug, given every two weeks by injection, and Artane, given orally each day. Since April 1976 respondent has shown no signs of hallucinations, has not been psychotic or aggressive, but without his medications his conduct would be more erratic. His illness of schizophrenic reaction is in a state of remission as a result of his taking Prolixin, but in spite of the remission, he does not correctly comprehend his present situation in that his goals and plans for return to his mother's home are unrealistic inasmuch as he would have to occupy the home alone, unattended, and without means of support other than a monthly check of $121.90.

Respondent has no skills to maintain himself outside of a hospital and is in no way able to provide for his basic needs. He is in need of the structured environment and external support provided by a hospital and cannot function independently outside of the hospital on his present dosage of medication. His prognosis is poor for both his chronic schizophrenia and his mental retardation.

Although respondent's brother lives only 50 yards from his mother's home, he has never assumed any responsibility regarding respondent's taking his medication outside of the hospital. While respondent is potentially dangerous, he is harmless as long as he is given Prolixin by injection and Artane regularly to offset the side effects of Prolixin.

The court concluded that respondent suffers from mental illness; that he is not now imminently dangerous to others by reason of his illness but is imminently dangerous to himself. The court ordered that respondent be recommitted to the mental hospital for a period not to exceed one year. Respondent appealed.

*Attorney General Edmisten, by Associate Attorney Isaac T. Avery III, for the State.*

*Judith L. Kornegay for respondent appellant.*

BRITT, Judge.

Respondent's sole assignment of error is based on his exception to the trial court's conclusion of law that he "is now imminently dangerous to himself by reason of his mental illness". We find no merit in the assignment.

[1] To support an involuntary commitment order, the court must find by clear, cogent and convincing evidence that a respondent is both mentally ill and imminently dangerous to himself or others. *In Re Carter*, 25 N.C. App. 442, 213 S.E. 2d 409 (1975). In the case at hand respondent does not challenge the court's determination that he is mentally ill; he does challenge the determination that he is imminently dangerous to himself.

[2] G.S. 122-58.2(1) provides that as used in Article 5A (Involuntary Commitment) "[t]he phrase 'dangerous to himself' includes, but is not limited to, those mentally ill or inebriate persons who are unable to provide for their basic needs for food, clothing, or shelter; . . . ." Thus the question presented is whether the court's findings that respondent, because of his mental illness, was unable to provide for his basic needs were sufficient. We think they were.

The findings are clear that respondent's welfare depends on his being injected every two weeks with Prolixin and that he take Artane orally every day; and that he cannot be depended on to obtain and take his needed medication outside of the hospital. He is unable to earn money and has a monthly income of only $121.90. Considering present day costs, that amount of money could not cover the cost of maintaining shelter for respondent and providing him with food, clothing, fuel and other basic needs.

For the reasons stated, the order appealed from is

Affirmed.

Judges CLARK and ERWIN concur.